IN the MATTER OF the ACQUISITION OF the PROPERTY OF Germaine SCHOENHOFEN, Condemnee, by the Wisconsin Department of Transportation, a state agency, Condemnor:

Germaine SCHOENHOFEN, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF TRANSPORTATION, Defendant-Respondent.

Court of Appeals

*No. 99–0629. Submitted on briefs September 10, 1999.—Decided November 18, 1999.*

(Also reported in 605 N.W.2d 249.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Christopher J. Blythe* and *Michael R. Bauer* of *Bauer Law Office* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael E. Perino*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. VERGERONT, J. Germaine Schoenhofen appeals the order withdrawing assignment to the Waupaca County Condemnation Commission for a determination of a condemnation award under

§ 32.05(9), STATS.[1] The grounds for the order were that her first application for assignment to the commission, although timely, was a nullity under the statute, and the corrected application was untimely because it was filed after the two-year statute of limitations had run. Under the circumstances of this case, we consider Schoenhofen's appeal to be from a final order entered by a circuit court in a special proceeding. We therefore reject the argument of the condemning authority, the Wisconsin Department of Transportation (DOT), that we have no jurisdiction over the appeal. We conclude that Schoenhofen's first application for assignment was not a nullity within the meaning of § 32.05(9), STATS. Accordingly, we reverse.

¶ 2.    The relevant facts are not disputed. As part of the reconstruction of U.S. Highway 10 in Waupaca County, DOT determined it was necessary to acquire a parcel of real estate owned by Schoenhofen. DOT notified her with a written "Award of Damages" that it would occupy the property on September 25, 1996, offering her $20,200 in damages for the acquisition of the real estate. On August 24, 1998, Schoenhofen filed with the clerk of court in Waupaca County four pages stapled together. The first page was titled "Notice of Application for Assignment to Waupaca County Condemnation Commission." The first two pages, numbered 1 and 2, stated that in accordance with § 32.05(9), STATS.,[2] Schoenhofen appealed the "amount

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[2] Section 32.05(9), STATS., provides in relevant part:

(9)    APPEAL FROM AWARD BY OWNER OR OTHER PARTY IN INTEREST. (a) Any party having an interest in the property condemned may, within 2 years after the date of taking, appeal from the award, except as limited by this subsection by applying to the judge of the

511

of compensation stated in the Award of Damages" and requested that the circuit court judge of Waupaca County assign the matter to the chairperson of the commission. The third page, unnumbered, was titled "Exhibit 'A' Legal Description," and the fourth page, also unnumbered, was the Award of Damages. The next day, Philip Kirk, "as a Judge of the Circuit Court of Waupaca County," entered an order assigning Schoenhofen's appeal as requested.

¶ 3.   Approximately one month later, by letter dated September 29, 1998, counsel for DOT informed the clerk of court that the Award of Damages, containing the amount of compensation offered by the State, was attached to the Notice of Application in violation of § 32.05(9), STATS. Counsel asked that the application not be referred to a judge, or, if referred, not acted

circuit court for the county wherein the property is located for assignment to a commission of county condemnation commissioners as provided in s. 32.08. . . . This application shall contain a description of the property condemned and the names and last-known addresses of all parties in interest but shall not disclose the amount of the jurisdictional offer nor the amount of the basic award. Violation of this prohibition shall nullify the application. Notice of the application shall be given to the clerk of the court and to all other persons other than the applicant who were parties to the award. The notice may be given by certified mail or personal service. Upon proof of the service the judge shall forthwith make assignment. . . .

(b)   If the commission's award exceeds the basic award the owner shall recover the excess plus interest thereon until payment from the date of taking less a period which is 14 days after the date of filing the commission's award. If the commission's award is less than the basic award, the condemnor shall recover the difference with interest until payment from the date of taking.

(c)   All sums due under this subsection shall be paid within 70 days after date of filing of the commission's award unless within such time an appeal is taken to the circuit court. In the event such appeal is later dismissed before trial such payment shall be made within 60 days after the dismissal date.

512

upon, or if assigned to the commission, then withdrawn. Schoenhofen's counsel received a copy of this letter and immediately, on September 30, 1998, filed a "Corrected Notice of Application" for assignment to the commission that did not have the Award of Damages attached. The next day Judge Kirk entered an order assigning this application to the chairperson of the commission. On November 9, 1998, after writing two more letters to the clerk of circuit court asking that the matter not be assigned to the commission, DOT filed a "Notice of Request for Judge to Withdraw Assignment," asking that Judge Kirk withdraw the assignment made on August 25, 1998, because it disclosed the amount of the award.

¶ 4.  Schoenhofen opposed DOT's request to withdraw the assignment. In addition to contending that she had filed a valid application, she argued Judge Kirk did not have the power to withdraw the assignment of the application because the assignment procedure under § 32.05(9), STATS., is an ex parte administrative proceeding and not a judicial proceeding, and once an assignment is made, the judge has no power to act further. Judge Kirk held a hearing on DOT's request. At the hearing DOT's counsel agreed with Schoenhofen that the proceeding was an administrative proceeding, not a judicial proceeding. He explained that was the reason he filed a request for withdrawal rather than a motion, although he acknowledged that his request was the equivalent of a motion. In DOT's view, Judge Kirk, acting in his administrative capacity, did have the authority to withdraw the assignment.

¶ 5.  Judge Kirk decided that, because of the plain language of § 32.09(5), STATS., he had no choice but to consider the first application a nullity, with the result

that the second application was not timely, and neither application could be assigned to the commission. Judge Kirk therefore entered an order withdrawing assignment of the matter to the commission. Judge Kirk stated that he was aware he was acting in an administrative rather than judicial capacity, but he did not expressly address Schoenhofen's argument that he did not have the power in an administrative capacity to withdraw the assignment.

## DISCUSSION

¶ 6.    On appeal Schoenhofen contends that, since the amount of the award was not disclosed in the application itself, and since there was no prejudice because the commission did not see the amount of the award,[3] the first application was not a nullity.[4] In addition to responding to this argument, DOT contends, relying on *Acheson v. Winnebago County Highway Comm.*, 14 Wis. 2d 475, 478, 111 N.W.2d 446 (1961), that we do not have jurisdiction to entertain an appeal before the com-

---

[3] Judge Kirk at the hearing stated that the members of the commission had not "seen the application, let alone the award." DOT's counsel did not object to that statement at that time, and does not now dispute this assertion, contained in Schoenhofen's brief on appeal. Therefore we accept the court's statement as accurate.

[4] Schoenhofen makes a second argument. Citing our decision in *City of La Crosse v. Shiftar Bros., Inc.*, 162 Wis. 2d 556, 469 N.W.2d 915 (Ct. App. 1991), she contends the rules of civil procedure apply to condemnation proceedings, and under § 802.09, STATS., the corrected application relates back to the first application, making the corrected application timely. We do not address this argument because it is unnecessary to our resolution of this appeal.

mission has made a decision, and we must therefore dismiss the appeal. We address this issue first.

¶ 7.   There are two distinct rationales in the cases which hold that an appellate court[5] does not have the power to entertain an appeal from a judge acting under § 32.09(5), STATS., although courts citing this rule do not often distinguish these: lack of finality and lack of a circuit court order. The former was articulated in *Manns v. Marinette & Menomonee Paper Co.*, 205 Wis. 349, 238 N.W. 624 (1931). In that case, after the county judge[6] appointed the commissioners upon the landowner's petition, the condemning authority filed a motion in circuit court to vacate and set aside the assignment on the ground that the petition for assignment was defective in certain ways and therefore a nullity. The condemning authority appealed the circuit court's order denying its motion to the supreme court, and the supreme court dismissed the appeal because the circuit court order was not a final order,[7] since the

---

[5] The appellate jurisdiction now vested in the court of appeals by the constitution and by statute was vested in the supreme court before the creation of the court of appeals. *Compare* §§ 251.08 and 817.09, STATS., 1975, *with* §§ 752.01(1), 808.01(1) and 808.03, STATS.

[6] Prior to court reorganization, there was a county court (*see* ch. 253, STATS., 1975) and a circuit court (*see* ch. 252, STATS., 1975), with the circuit court having appellate and supervising jurisdiction over inferior courts, as well as original jurisdiction. *See* WIS. CONST. art. VII, § 8 (1975). Section 32.05(9), STATS., 1975, referred to the "judge of the circuit or county court" as did its predecessor, § 32.04, STATS., 1957.

[7] The court in *Manns v. Marinette & Menomonee Paper Co.*, 205 Wis. 349, 355, 238 N.W. 624, 626 (1931), declined to decide whether the county judge was acting in a "ministerial" or in a judicial capacity in appointing the commissioners, or whether the circuit court had superintending authority over the county

condemning authority had the statutory right to appeal the award of the commissioners to the circuit court and could raise any issue before the circuit court.[8] *Id.* at 355, 238 N.W. at 626.

¶ 8. This lack of finality rationale was relied on in a number of subsequent cases, including *Barrows v. Kenosha County*, 275 Wis. 124, 125, 81 N.W.2d 519 (1957). *Barrows*, in turn, was relied upon by the court in *Acheson*, 14 Wis. 2d at 478, 111 N.W.2d at 447, in concluding that it had no authority to entertain the appeal from a county court order granting the motion of the Winnebago County Highway Committee to dismiss the landowner's application for assignment to a commission because the application for assignment disclosed the basic award in violation of § 32.05(9)(a), STATS., 1959. The governing statute in effect just prior to the date on which the landowner filed the application, § 84.09(2), STATS., 1957, gave the landowner the right to apply to the county judge to appraise the value of the land, and that is what the landowner's application asked for, also stating the amount awarded by the highway committee. The supreme court held that the

judge's assignment because, in either case, it concluded, the order of the circuit court denying the motion to vacate the assignment was not a final order as required by § 274.33, STATS., 1929, for an appeal to the supreme court.

[8] At that time §§ 32.04–32.08, STATS., 1929, provided that persons desiring to acquire property by condemnation must petition the county judge or circuit judge, who were to hold a hearing to determine the necessity of the taking. If the court determined that the condemning entity was entitled to condemn, the judge was to appoint commissioners to ascertain the compensation. Section § 32.11, STATS., 1929, provided, as does current § 32.05(10), that a party may appeal from the award of the commissioners to the circuit court.

function of the judge in assigning the application to the commission under § 32.05(9) was "administrative, not judicial"; until the commissioners made their award the proceeding was not of a judicial nature; and the county judge lacked the authority to act on the landowner's application. *Acheson*, 14 Wis. 2d at 478, 111 N.W.2d at 447. The court also held that the county judge, with only the power of an administrative officer under § 32.05(9), did not have the authority to grant the landowner's motion to amend the application to conform to the new statute. *Id.* at 479, 111 N.W.2d at 448.

¶ 9.   However, in a later case, *Schroedel Corp. v. State Highway Comm'n*, 32 Wis. 2d 305, 310, 145 N.W.2d 217, 220 (1966) (*Schroedel I*), the supreme court held that the finality rationale of *Manns* was no longer valid[9] because statutory revisions limited the issues that could be raised in a trial de novo in the circuit court following the commission's award. Under § 32.05(10), STATS., enacted by Laws of 1959, ch. 639, the court noted, only the issues of title and the amount of just compensation could be raised in the circuit court after the commission's award, and therefore the court's decision that the jurisdiction of the commission had

---

[9] After deciding not to dismiss the appeal in *Schroedel Corp. v. State Highway Comm'n*, 32 Wis. 2d 305, 311 (1966), (*Schroedel I*) the court decided the merits of the appeal in *Schroedel Corp. v. State Highway Comm'n*, 34 Wis. 2d 32, 46, 148 N.W.2d 691, 698 (1967) (*Schroedel II*), concluding that, although there were some irregularities in the documents filed by the landowner, they disclosed an intention to appeal to the condemnation commission under § 32.05(9), STATS., and therefore supported the conclusion that the assignment to the commission based on those documents was an assignment by a judge and not by the circuit court.

517

been properly achieved was a final decision subject to review under § 274.33(2), STATS., 1965. *Schroedel I*, 32 Wis. 2d at 309–10, 145 N.W.2d at 220. The supreme court indicated in a later case, *519 Corp. v. DOT*, 92 Wis. 2d 276, 282, 284 N.W.2d 643, 646–47 (1979), that its ruling in *Acheson* on its power to entertain the appeal had to be considered in light of *Schroedel I*. In summarizing the disposition of *Acheson* as "dismiss[al of] the appeal for lack of jurisdiction to entertain the appeal [without] reach[ing] the merits of the matter," the supreme court added this footnote: "*But see Schroedel Corp. v. State Highway Comm'n*, 32 Wis. 2d 305, 145 N.W.2d 217 (1966)." *519 Corp.*, 92 Wis. 2d at 283 n.8, 284 N.W.2d at 647.

¶ 10.   To the extent that DOT's argument that we lack the authority to decide this appeal is based on the lack of finality of Judge Kirk's order, we conclude after *Schroedel I* this is not a ground for dismissing this appeal. We observe the lack of finality argument has even less force in this case than in *Schroedel I* because, upon the withdrawal of Schoenhofen's assignment to the commission, there will be no proceeding before the commission which Schoenhofen can appeal to the circuit court under § 32.05(10), STATS. We therefore turn to the second rationale in the case law—the lack of an order of a circuit court.

¶ 11.   This alternative rationale rests on the premise that when a judge acts under § 32.05(9), STATS., he or she is not carrying out ordinary judicial functions, and no power is thereby conferred upon the circuit court. *See Olen v. Waupaca County*, 238 Wis. 442, 446,

300 N.W. 178, 180–81 (1941).[10] The judge's function under the statute has been described as administrative rather than judicial. *See, e.g., Barrows,* 275 Wis. at 125, 81 N.W.2d at 520. Because an appeal to the court of appeals is defined as a review of a "judgment or order of a circuit court," *see* § 808.01(1), STATS., this court does not have the power of appellate review over decisions of a circuit judge acting in a non-judicial capacity. In *Town Bd. v. Webb,* 118 Wis. 2d 362, 366, 348 N.W.2d 591, 593 (Ct. App. 1984), we applied this reasoning to a circuit judge's function under § 80.17, STATS., 1983–84, which at that time provided that persons aggrieved by an order of town supervisors regarding laying out, altering or discontinuing of highways could apply to a circuit court judge for the appointment of commissioners to review the order. We concluded we had no jurisdiction over a non-judicial order and dismissed the appeal. *Id.*

¶ 12.   The lack of a circuit court order to appeal from was not an issue in *Schroedel I* because the appeal to the supreme court was from a circuit court order dismissing an order to show cause. *Schroedel I,* 32 Wis. 2d at 306, 145 N.W.2d at 218. After one circuit judge made the assignment to the commissioners, the highway commission sought an order to show cause from the circuit court that the assignment to the condemnation commission should be dismissed because of deficiencies in the application. *Id.* The circuit court, presided over by a judge other than the one who made the assignment, determined that the application was statutorily sufficient and dismissed the order to show cause. Section 274.33(2), STATS., 1965, the statutory

---

[10] The supreme court in *Olen* referred to "county court" and "county judge" in this context, rather than "circuit court" and "circuit judge" for the reasons explained in footnote 6.

authority the supreme court relied on for its appellate jurisdiction, provided that a "final order affecting a substantial right made in special proceedings," "when made by the court" could be appealed to the supreme court.[11] Presumably the show-cause proceeding was a special proceeding, and because it was in circuit court, the order dismissing the order to show cause was the order of a circuit court.

¶ 13. In the reported cases after *Schroedel I* in which an appellate court decided an issue on the merits concerning alleged defects in an application under § 32.05(9), STATS., the appeals have been from orders of the circuit court, not from an order of the circuit judge to whom the application was made. *See State ex rel. Milwaukee County Expressway Comm'n v. Spenner*, 51 Wis. 2d 138, 142, 186 N.W.2d 298, 300 (1971) (appeal from circuit court order granting petition for writ prohibiting commission from hearing appeal after assignment); *519 Corp.*, 92 Wis. 2d at 277, 284 N.W.2d at 644 (appeal from circuit court order denying motion to vacate the judge's assignment to condemnation commission under § 32.05(10) because of defects in application); *DOT v. Peterson*, 226 Wis. 2d 623, 626, 594 N.W.2d 765, 767 (1999) (appeal from circuit court order denying supervisory writ prohibiting commission from hearing appeal after assignment).

¶ 14. Because our power to entertain this appeal is inextricably linked to the capacity in which Judge Kirk was acting when he entertained the request for withdrawal, we must closely examine that capacity.

---

[11] The court in *Schroedel Corp. v. State Highway Comm'n*, 32 Wis. 2d 305, 310, 145 N.W.2d 217, 220 (1966), concluded that § 274.33(3), STATS., 1965, ("an order [that] . . . decides a question of jurisdiction") provided an alternative basis for its appellate jurisdiction.

Although it is well established that a judge acts in an administrative rather than a judicial capacity in assigning an application to the commission under § 32.05(9), STATS., the scope of the judge's administrative power under § 32.05(9) is not defined in the statute, and case law has not provided a precise definition. The statute states that, "[u]pon proof of the service the judge shall forthwith make assignment," suggesting that assignment is the equivalent of a clerical act following automatically upon the filing of the application together with proof of service as prescribed in the statute. The supreme court has described the assignment as an "ex parte administrative proceeding," *see Schroedel Corp. v. State Highway Comm'n*, 34 Wis. 2d 32, 37, 148 N.W.2d 691, 694 (1967) (*Schroedel II*). This description suggests that the judge is to act upon an application for assignment without a hearing at which opposing parties present their views on the validity of the application or the propriety of an assignment. In a similar vein, the court in *Schroedel II* also described the action taken by the judge in assigning the application to be "not entirely dissimilar from that taken where parties to be married request a dispensation of the required five-day period between application for and the issuance of marriage license."[12] *Id.* at 38, 148 N.W.2d at 694. Finally, in *Acheson*, the supreme court specified one thing a judge acting in his or her administrative capacity under § 32.05(9) did *not* have

---

[12] At the time *Schroedel* II was decided, § 245.08, STATS., 1965, provided that a county judge could dispense with the five-day requirement upon certain showings; that statute was later renumbered to § 765.08, STATS., and amended to provide that the county clerk may dispense with that requirement "at his or her discretion." *See* Laws of 1979, ch. 32, § 48; Laws of 1981, ch. 20, § 1777t.

the power to do: grant the landowner's motion to amend an application. *Acheson*, 14 Wis. 2d at 478, 111 N.W.2d at 447–48.[13]

¶ 15.  For additional guidance, we look to a recent case that discussed the distinction between a judge's administrative and judicial acts in another context—that of requests for substitution of judges. In *State ex rel. James L.J. v. Circuit Court*, 200 Wis. 2d 496, 503, 546 N.W.2d 460, 464 (1996), the supreme court decided the court of appeals was authorized by Article VII, Section 5(3) of the Wisconsin Constitution and § 752.02, STATS., to exercise our supervisory authority over a chief judge of a circuit court ruling on a substitution request under § 801.58(2), STATS. Therefore, the supreme court held, the court of appeals had the power to entertain a petition for a supervisory writ challenging the judge's decision. In reaching this conclusion, the supreme court overruled our earlier decision, *State ex rel. Gilboy v. Circuit Court*, 119 Wis. 2d 27, 349 N.W.2d 712 (Ct. App. 1984), rejecting our rationale there that this function of a chief judge was administrative and we therefore had no supervisory authority. The court in *James L.J.* stated:

---

[13] This ruling was based on the court's reading of § 32.14, STATS., 1959, which authorized a "court or judge [to] . . . permit amendments to be made to a petition filed pursuant to § 32.06," while § 32.06, STATS., 1959, the court observed, expressly withheld that authority in highway condemnation matters. *Acheson v. Winnebago County Highway Comm.*, 14 Wis. 2d 475, 478, 111 N.W.2d 446, 447–48 (1961). That wording remains in the present § 32.14 and the present § 32.06 expressly does not apply to "acquisitions under s. 32.05," which is entitled "Condemnation for sewers and transportation facilities."

The court of appeals [in *Gilboy*] failed to consider the context in which the chief judge was acting. The issues of whether a substitution request is timely or whether substitution is available raise questions of law regarding the interpretation of a statutory right. Although the subject of judicial substitution affects the administration of the courts, the exercise of the statutory right to substitution in any particular case raises a question of law rather than a question of court administration. The circuit judge's ruling on a substitution request is thus a judicial decision rendered as part of the underlying action or proceeding. Because the court of appeals has jurisdiction over the underlying proceeding in which a substitution request arises, it should also have jurisdiction over the legal issues raised in the substitution request itself.

*James L.J.*, 200 Wis. 2d at 504, 546 N.W.2d at 464.

¶ 16.   We recognize that *James L.J.* is distinguishable in that there is an existing judicial proceeding in which a substitution request is made, whereas there is no existing judicial proceeding when an application for assignment under § 32.05(9), STATS., is made. Nevertheless, the supreme court's classification of a ruling on the interpretation of a statutory right as a judicial decision on a legal issue, rather than an administrative function, indicates that the administrative function of a judge under § 32.05(9) does not include ruling on questions of law, such as the interpretation of that statute.

¶ 17.   DOT contends the withdrawal of the assignment was an administrative act, because if a judge has the administrative authority to assign a matter to the commission, it follows he or she has the administrative authority to correct an error in the assignment. We do not agree that this conclusion nec-

essarily follows from the premise. As we have stated above, the statute indicates that the judge is to make the assignment promptly, upon the prescribed service, and the case law defines the procedure as "ex parte." Neither the statute nor the case law indicates that as part of his or her administrative duties the judge is to hold a hearing, consider legal arguments, and interpret and apply cases and statutes.

¶ 18.   We also do not agree with DOT's contention that, because the circuit court may dismiss matters over which it has no subject matter jurisdiction, *see Achtor v. Pewaukee Lake Sanitary Dist.*, 88 Wis. 2d 658, 664, 277 N.W.2d 778, 781 (1979), a judge acting as an administrative officer may do the same under § 32.05(9), STATS., by ordering a withdrawal of an erroneous assignment.[14] The very limited scope of administrative authority granted a judge under § 32.05(9) is simply not analogous to the much broader

---

[14] We use the term "subject matter jurisdiction" here because that is the term DOT uses in its argument on this point, and that is the term the court used in *Achtor v. Pewaukee Lake Sanitary Dist.*, 88 Wis. 2d 658, 664, 277 N.W.2d 778, 781 (1979). However, as the supreme court subsequently explained, since the Wisconsin Constitution now grants circuit courts the authority to hear actions of any nature, the failure to follow statutory mandates does not result in loss of subject matter jurisdiction, but rather loss of competence, that is, the authority or power to adjudicate the particular case before it. *Green County Dept. of Human Servs. v. H.N.*, 162 Wis. 2d 635, 655–56, 469 N.W.2d 845, 853 (1991). *Achtor* involved the failure to commence an action in circuit court within the time prescribed in § 32.05(5), STATS. (governing the procedure for contesting the right of the condemnor to condemn the property). Therefore, while the circuit court had subject matter jurisdiction, it did not have the competence to decide the particular case before it, and dismissal was proper.

constitutional and statutory judicial authority granted the circuit court. Indeed this very argument by DOT illustrates that, although DOT denominates Judge Kirk's decision to order withdrawal of the assignment as an "administrative" act, the substance of what Judge Kirk did is most accurately described in terms applicable to the judicial authority of the circuit court.

¶ 19.  We conclude that Judge Kirk was acting beyond the administrative power contemplated by § 32.05(9), STATS., when he entertained DOT's request for withdrawal, heard argument for and against that request, and granted the request based on his interpretation of the statute and case law. As DOT's counsel recognized in the comments it made to Judge Kirk, and as the case law we have summarized above shows DOT has done in the past, DOT could have petitioned for a writ of prohibition in the circuit court to prevent the commission from acting on the assignment. Alternatively, DOT might have sought a declaratory ruling that the application was invalid, along with supplemental injunctive relief. Had DOT taken either of these steps, the circuit court would have had the power to rule on the legal issue of whether the application met the requirements of § 32.05(9), and this court would, without doubt, have power to decide an appeal from that decision. The difficult question we face is whether we should consider Judge Kirk's decision as an administrative decision, because that is how DOT denominated the proceeding on its request and Judge Kirk accepted that characterization, or, instead construe the proceedings to comport with the substance of what DOT was requesting and the relief it was ultimately granted.

525

¶ 20. We are persuaded that we should construe DOT's request for an order withdrawing the assignment as a special proceeding in the circuit court. This comports with the substance of the relief DOT was seeking, is fair to both parties, and permits us to address the merits of the dispute between the parties. As we have already concluded, the decision Judge Kirk rendered was a judicial decision, and although it was beyond his power as an administrative officer, it was within his power acting as a circuit court.

¶ 21. We believe there is ample authority for construing DOT's request for a withdrawal of the assignment to comport with the substance of the proceeding rather than the label DOT gave it. The supreme court looked beyond the label of a judge's action in *James L.J.*, 200 Wis. 2d at 504, 546 N.W.2d at 464, to determine whether a judge was acting in a judicial or an administrative capacity. The supreme court also overlooked procedural irregularities in the application filed by the property owner in *Schroedel II*, 34 Wis. 2d at 42–46, 148 N.W.2d at 696–98, and construed the application as one to the circuit judge under § 32.05(9), STATS., rather than to the circuit court, because that was more consistent with the substance of what the party was requesting. We have here, in effect, the reverse of *Schroedel II*: in name a request to the circuit judge in his administrative capacity, but the substance of the relief requested may be provided only in the judge's judicial capacity, acting as a circuit court. Finally, in *Olen*, 238 Wis. at 447–49, 300 N.W. 181–82, the supreme court decided an appeal from a circuit court order rather than dismissing it as premature, even though the circuit court by statute did not have the authority to entertain the appeal from the county

judge's decision that the taking was necessary until after the commission decided on the compensation.[15] The court did so because it decided the effect of the parties' actions was to stipulate to the circuit court deciding all the issues that the court would have the authority to decide had the statutory procedure been followed.[16]

¶ 22. Having construed DOT's filing requesting a withdrawal of the assignment as a special proceeding in circuit court, we conclude we have appellate jurisdiction to review the final order declaring the applications invalid and withdrawing the assignment to the commission. We now turn to the merits of the issue, which we frame in this way: was Schoenhofen's first application a "nullity" within the meaning of § 32.05(9)(a), STATS.? That subsection provides in relevant part:

> This application [for assignment to a commission] shall contain a description of the property condemned and the names and last-known addresses of all parties in interest but shall not disclose the amount of the jurisdictional offer nor the amount of

---

[15] *See* footnote 8 for an explanation of the statute that preceded § 32.05(10), STATS.

[16] We observe many of the statutes that at one time provided that certain administrative tasks be performed by a judge of the circuit court or county court have been amended so that other public officers perform the tasks, *see, e.g.*, § 765.08, STATS., regarding the application and issuance of marriage licenses, referred to in footnote 12. In view of the difficulties and complexities arising from the distinction between a judge and a circuit court in § 32.05, STATS., the legislature may wish to consider whether there is a need for continuing to have a judge, as opposed to another public official, perform the task of assigning a matter to the commission under § 32.05(9), STATS., (and other related provisions).

the basic award. Violation of this prohibition shall
nullify the application.

Resolution of this issue requires the interpretation of a
statute and its application to undisputed facts, a question
of law, which we review de novo. *See Peterson*, 226
Wis. 2d at 627, 594 N.W.2d at 767.

¶ 23.   Schoenhofen contends that her application
did not disclose the amount of the award, that the
Award of Damages was inadvertently attached by a
clerical error, was not intended to be part of the application
and was not disclosed to the commission. DOT
argues the statute plainly provides that an application
that discloses the amount of the award is a nullity.
However, beyond describing Schoenhofen's position as
"absurd," DOT does not explain why the statute
requires that the Award of Damages must be considered
part of Schoenhofen's application. DOT does not
dispute that the Award of Damages was attached to the
preceding pages through a clerical error in Schoenhofen's
counsel's office.[17] Apparently DOT's position is
that everything that is filed by the landowner and stapled
together, regardless of any other circumstances, is
the "application" for purposes of § 32.05(9), STATS. We
reject this position for several reasons.

¶ 24.   First, an inspection of the four pieces of
paper filed by Schoenhofen indicates that, but for the
staple, the Award of Damages is not part of the application.
Although the title on the page numbered 1 is
"Notice of Application for Assignment to Waupaca
County Condemnation Commission," the contents of

---

[17] Schoenhofen's counsel made this representation in argument
at the hearing on DOT's request for withdrawal, and
apparently both DOT and Judge Kirk accepted the explanation
as fact. We therefore do as well.

that page make clear that it contains both a notice of application and the application itself. The second page is part of the application, since it is numbered 2, and since paragraph 3 begins on page 1 and continues on page 2. The third page is also part of the application, because it is entitled "Exhibit 'A' Legal Description," and paragraph 3 of the application (page 2), refers to "attached . . . Exhibit A" as containing the description of the property condemned. However, the Award of Damages is not marked as an exhibit and is not referred to as an exhibit or attachment in either pages 1 or 2. Rather, page 1 of the application states only that it is an appeal "from the amount of compensation stated in the Award of Damages issued by [DOT]."

¶ 25.  Second, the supreme court's discussion of the application for assignment in *519 Corp.* provides support for not automatically deciding that everything Schoenhofen filed was part of the application. In *519 Corp.*, the property owner filed a Notice of Appeal to which an affidavit executed by the landowner's attorney and exhibits were attached. The attachments set forth the amount of the jurisdictional offer and the amount of the award of damages. *519 Corp.*, 92 Wis. 2d at 279 n.2, 284 N.W.2d at 645. After the circuit judge assigned the application to the commission and the commission made an award, DOT appealed under § 32.10, STATS., to the circuit court and then moved the circuit court to vacate the judge's assignment of the application on the ground that it disclosed the offer of the jurisdictional amount and the award of damages. The circuit court denied the motion and the supreme court affirmed. *Id.* at 283, 284 N.W.2d at 647. The supreme court first observed that the parties conceded that the application contained the jurisdictional offer and the amount of the basic award. Then, in a footnote,

it described the documents filed by the property owner, as we have done above, and added: "The Notice of Appeal, the affidavit and the exhibits must be read together to constitute the Corporation's application, because the notice standing alone does not conform to sec. 32.05(9)(a), which requires that the application contain a description of the property condemned." *Id.* at 279 n.2, 284 N.W.2d at 645. However, the supreme court concluded that "under the special circumstances[18] of this case, the application . . . was not a 'nullity.'" *Id.* at 283, 284 N.W.2d at 647 (footnote added). The court accepted the trial court's findings that there had been an agreement to delete the amounts and to consider the application with the amounts deleted as a new application, which, the court noted, was still within the two-year time limit for filing an affidavit.[19] *Id.* at 283–84, 284 N.W.2d at 647.

---

[18] The circuit court in *519 Corp. v. DOT*, 92 Wis. 2d 276, 280, 284 N.W.2d 643, 645 (1979), relied on affidavits presented by three commissioners, each averring that they did not know the amount of the jurisdictional offer or basic award, and DOT conceded this was true. The circuit court also relied on the corporation's attorney's affidavit which averred as follows. After the corporation filed the application with the circuit judge, and before its assignment to the commission, the assistant attorney general handling the corporation notified the corporation's attorney that the disclosure of the offer and award violated the statute, and the corporation's counsel offered to voluntarily dismiss its application and start over. However, the assistant attorney general said that would not be necessary; it was sufficient to have the jurisdictional offer removed from the file until the commissioners rendered their decisions, which the clerk was then asked to do. *Id.* at 280–81, 284 N.W.2d at 646.

[19] We recognize in this case, unlike in *519 Corp.*, there was no agreement to consider the first application as a new application excluding the jurisdictional amount and award; rather,

¶ 26.   Unlike the landowner in *519 Corp.*, Schoenhofen is not conceding that the application contained the jurisdictional offer and award, and we therefore focus on the supreme court's explanation in *519 Corp.* for those parties' concession to the contrary. There the jurisdictional award was apparently attached as an exhibit either to the notice of appeal or the attorney's affidavit, and there was no way to exclude that document without excluding the description of the property, which must be in the application under § 32.05(9)(a), STATS. In this case, not considering the Award of Damages as part of the application does leave an application that meets the statutory requirements, and, as we have noted above, this is the logical conclusion based on an examination of the documents themselves.

¶ 27.   The supreme court's decision in *519 Corp.* also provides additional guidance in that it explains the purpose of the prohibition against disclosure of the jurisdictional offer or basic award in the application: to prevent that information from being disclosed to the condemnation commission. *519 Corp.*, 92 Wis. 2d at 278–79, 284 N.W.2d at 644. Therefore, in deciding what constitutes an application within the meaning of § 32.09(5), STATS., we must do so in a way that carries out this purpose or is not inconsistent with it. Because the commission has not seen any of the four pages Schoenhofen initially filed with the clerk of courts, and because the fourth page is easily and completely detachable, the purpose of the prohibition does not require that we consider the fourth page to be a part of the application.

there was an actual second application filed without the fourth page attached. However, our focus here in discussing *519 Corp.* is on what constitutes an application, not on the consequences of a deficient application.

¶ 28. Finally, we consider relevant the supreme court's statements regarding the construction of condemnation statutes in *Schroedel II* and in *Peterson*. In *Schroedel II* the court affirmed the rule from prior Wisconsin cases that condemnation statutes are in derogation of common law and must be strictly construed, and approved the rule in other jurisdictions that such statutes are to be strictly construed against the condemnor and in favor of the condemnee. *Schroedel II*, 34 Wis. 2d at 45, 148 N.W.2d at 698. In *Peterson* the supreme court interpreted the service requirements of § 32.05(9), STATS., finding them ambiguous and following the rule that ambiguity in procedural statutes should be liberally construed to permit a determination on the merits. *Peterson*, 226 Wis. 2d at 633, 594 N.W.2d at 770. The supreme court emphasized the importance of eliminating confusion over the steps a property owner must follow to appeal an award of damages, and encouraged DOT and other condemning authorities to facilitate the property owner's review of condemnation decisions by including with its award of damages a notification of the process a property owner must undertake for an appeal. *Id.* at 634–35, 594 N.W.2d at 771. Although directed to a different issue, we view the supreme court's statement as relevant here because it emphasizes the importance of facilitating a property owner's review of condemnation decisions. Treating the Award of Damages as part of Schoenhofen's application does not, in the circumstances of this case, further the purpose of the requirement that the application not state the amount of the jurisdictional offer or the award, and it has the

effect of preventing Schoenhofen from obtaining review.[20]

¶ 29.   For these reasons, together with the undisputed fact that the Award of Damages was attached to the Notice of Application through an inadvertent error in the office of Schoenhofen's counsel, we conclude that the first application consists of the two-page notice of application and Exhibit A, and does not include the Award of Damages. We therefore reverse the circuit court's decision declaring the first application a nullity and withdrawing the assignment of the application from the commission. On remand, the court should vacate the order withdrawing the application from the commission. We assume the parties will cooperate in facilitating the forwarding of the application, as we have defined it, to the commission.

*By the Court.*—Order reversed and cause remanded with directions.

---

[20] We observe that in *DOT v. Peterson*, 226 Wis. 2d 623, 626, 594 N.W.2d 765, 767 (1999) (appeal from circuit court order denying supervisory writ prohibiting commission from hearing appeal after assignment), the supreme court used the term "circuit court" in describing the assignment of the property owners to the commission under § 32.05(9), STATS. We assume the supreme court did not distinguish between a judge and a circuit court because that distinction was not relevant to any issue in the case and so was overlooked by the parties and the supreme court.